IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EVANS HOTELS, LLC, a California limited
liability company; BH PARTNERSHIP LP,
a California limited partnership; and EHSW,
LLC, a Delaware limited liability company

*Plaintiffs/Appellants/Cross-Appellees,*

- *v.* -

UNITE HERE! LOCAL 30; BRIGETTE
BROWNING; SAN DIEGO COUNTY
BUILDING AND CONSTRUCTION
TRADES COUNCIL, AFL-CIO;
TOM LEMMON; DOES 1-10

*Defendants/Appellees/Cross-Appellants.*

On Appeal from the United States District Court for the
Southern District of California
Case No. 3:18-cv-02763-RSH-AHG

**APPELLANTS' MOTION FOR JUDICIAL NOTICE**

**HIGGS FLETCHER
& MACK LLP**
William M. Low
401 West A Street, Suite 2600
San Diego, CA 92101-7910
(619) 236-1551
wlow@higgslaw.com

**MOGIN RUBIN LLP**
Daniel J. Mogin
Timothy Z. LaComb
600 West Broadway, Ste. 3300
San Diego, CA 92101
(619) 687-6611
dmogin@moginrubin.com
tlacomb@moginrubin.com

**COMPLEX APPELLATE
LITIGATION GROUP LLP**
Rex S. Heinke
Jessica M. Weisel
811 Wilshire Boulevard, 17th Fl.
Los Angeles, CA 90017
(213) 878 0404
rex.heinke@calg.com
jessica.weisel@calg.com

**LITTLER MENDELSON, P.C.**
Lawrence D. Levien
815 Connecticut Avenue, NW
Suite 400
Washington, DC 20006
(202) 842-3400
LLevien@littler.com

*Attorneys for Plaintiffs/Appellants/Cross-Appellees*

# MOTION FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201 and in connection with the Opening Brief filed concurrently with this motion, Plaintiffs, Appellants, and Cross-Appellees, Evans Hotels, LLC, BH Partnership LP, and EHSW, LLC (together, "Plaintiffs") move this court to take judicial notice of the court records from the California Superior Court Case entitled *San Diegans for Open Government v. BH Partnership and City of San Diego*, Cal. Sup. Ct. Case No. 37-2018-00055910-CU-TT-CTL.

Specifically, Plaintiffs request judicial notice of the following documents:

**Exhibit A**: "Complaint," filed on November 1, 2018, in *San Diegans for Open Government v. BH Partnership and City of San Diego*, Cal. Super. Ct. Case No. 37-2018-00055910-CU-TT-CTL

**Exhibit B**: "Statement of Decision," entered on February 7, 2023, in *San Diegans for Open Government v. BH Partnership and City of San Diego*, Cal. Super. Ct. Case No. 37-2018-00055910-CU-TT-CTL

# DISCUSSION

## A.    Legal authority for taking judicial notice.

Judicial notice may be taken at "any stage of the proceeding."  Fed. R. Evid. 201(d).  Thus, judicial notice may be taken for the first time on appeal.  *See Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971) (taking judicial notice of California state court cases).  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).

A court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  Furthermore, judicial notice is appropriate to review later developments not included in the trial court record but which "may affect [the reviewing court's] consideration of the various issues presented" by the appeal.  *Bryant,* 444 F.2d at 357.

## B.    The material to be noticed is relevant to this appeal.

This appeal is from the dismissal of Plaintiffs' Third Amended Complaint against Appellees, which alleged, in brief essence, that

Appellees engaged in illegal conduct to force Plaintiffs into union contracts. *See generally* Op. Br. Part of those allegations are Appellees' threats of sham petitioning related to a proposed hotel redevelopment project. The project involved a refresh of the Bahia Hotel in Mission Bay San Diego, which eliminated a nearby road, Gleason Road, in favor of greater pedestrian access to the bay. As a coercive tactic, Appellees threated to challenge the redevelopment project on the false grounds that elimination of Gleason Road violated the Mission Bay Park Master Plan.

The requested materials are related to a California state court lawsuit challenging the redevelopment project on precisely those grounds. Critical to Plaintiffs' allegations of sham petitioning, the Superior Court in its Statement of Decision found that the Mission Bay Park Master Plan did *not* require the retention of Gleason Road and that the plaintiff's argument to that end "strain[ed] credulity." *See* Ex. B, 15:18-20. The Superior Court held that Appellees' conduct was tantamount to "[e]conomic blackmail." *Id*. at 18:24. Thus, the materials have a direct bearing on whether Plaintiffs have sufficiently alleged a claim of "sham petitioning" regarding Gleason Road.

## CONCLUSION

For the reasons set forth above, this Court should grant this motion to take judicial notice.

Dated:  December 13, 2023        Respectfully submitted,

By:   *s/ Rex S. Heinke*
      Rex S. Heinke
      Jessica M. Weisel
Complex Appellate Litigation Group LLP

      William M. Low
Higgs Fletcher & Mack LLP

      Daniel J. Mogin
      Timothy Z. LaComb
Mogin Rubin LLP

      Lawrence D. Levien
Littler Mendelson, P.C.

*Attorneys for Plaintiffs, Appellants, and Cross-Appellees*

**EXHIBIT A**

BRIGGS LAW CORPORATION [FILE: 1593.64]
Cory J. Briggs (State Bar no. 176284)
Anthony N. Kim (State Bar no. 283353)
99 East "C" Street, Suite 111
Upland, CA 91786
Telephone: 909-949-7115

Attorneys for Plaintiff and Petitioner San Diegans
  for Open Government

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**11/01/2018** at 04:30:00 PM

Clerk of the Superior Court
By Yvette Mapula, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO – HALL OF JUSTICE

|  |  |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT,<br><br>    Plaintiff and Petitioner,<br><br>vs.<br><br>CITY OF SAN DIEGO; and DOES 1 through 100,<br><br>    Defendants and Respondents;<br><br>DOES 101 through 1,000,<br><br>    Defendants and Real Parties in Interest. | CASE NO. _____<br><br>37-2018-00055910-CU-TT-CTL<br><br>**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR WRIT OF MANDATE UNDER THE CALIFORNIA ENVIRONMENTAL QUALITY ACT AND OTHER LAWS** |

Plaintiff and Petitioner SAN DIEGANS FOR OPEN GOVERNMENT ("Petitioner") alleges as follows:

**Parties**

1.      Petitioner is a non-profit organization formed and operating under the laws of the State of California. At least one of Petitioner's members resides in, or near, the City of San Diego, California, and has an interest in, among other things, ensuring open, accountable, and responsive government and in protecting the City's quality of life.

2.      Defendant and Respondent CITY OF SAN DIEGO ("CITY") is a "public agency" under Section 21063 of the Public Resources Code and a "local government" under Section 30109 of the Public Resources Code. As a "public agency," CITY is required to comply with California

1    Environmental Quality Act ("CEQA"), Public Resources Code Section 21000 *et seq*. As a "local

2    government," CITY is also required to comply with the California Coastal Act ("Coastal Act"), Public

3    Resources Code Section 30000 *et seq*.

4         3.    The true names and capacities of the Defendants/Respondents/Real Parties in Interest

5    identified as DOES 1 through 1,000 are unknown to Petitioner, who will seek the Court's permission

6    to amend this pleading in order to allege the true names and capacities as soon as they are ascertained.

7    Petitioner is informed and believes and on that basis alleges that each of the fictitiously named DOES

8    1 through 100 has jurisdiction by law over one or more aspects of the proposed project that is the

9    subject of this proceeding and DOES 101 through 1,000 has some other cognizable interest in the

10    subject matter of this lawsuit.

11                    **Background Information**

12         4.    CITY implements and administers a local coastal program ("LCP") that was certified

13    by the California Coastal Commission as being consistent with the Coastal Act. Generally speaking,

14    the LCP applies to all development and land uses in CITY's portion of the "coastal zone" as defined

15    by Public Resources Code Section 30103.

16         5.    CITY's LCP includes the Mission Bay Park Master Plan ("Master Plan"). The Master

17    Plan was adopted by CITY's city council in 1994, approved by the California Coastal Commission

18    thereafter, subsequently subjected to judicial review, approved with modifications by the Commission

19    in 1996, which modifications were adopted by CITY's city council in 1997. The modifications included

20    but were not limited to the insertion of the words "Retain Gleason Road" on Figure 12 (depicting the

21    Bahia Point Development Area) of the Master Plan.

22         6.    On or about October 3, 2018, CITY exercised its discretion and made an "administrative

23    correction" to Figure 12 in the Master Plan by deleting the words "Retain Gleason Road" ("Project").

24    The Project was approved unilaterally by CITY's director of the planning department (and not by the

25    city council) without any prior public notice, public input, or the posting of a Notice of Right to Appeal

26    Environmental Determination ("NORA") as mandated by San Diego Municipal Code Section

27    112.0310(a). As a result, the Master Plan no longer requires CITY or any developer to maintain the

28    public's access to Mission Bay via Gleason Road, contrary to decisions made more than 20 years ago.

7.     Petitioner opposes the Project based on CITY's lack of transparency and failure to abide by all applicable laws. The Project violates CITY's LCP and/or effectively amends it (without approval from the California Coastal Commission) by substantially curtailing public access to coastal resources on Mission Bay and without compliance with CEQA.

**Notice Requirements and Time Limitations**

8.     This proceeding is being commenced not more than 35 days after the notice described in Public Resources Code Section 21167(d) was filed with the county clerk (if such a notice was filed).

9.     Petitioner has caused a Notice of Commencement of Action to be served on Defendants/Respondents, as required by Public Resources Code Section 21167.5. A true and correct copy of the Notice of Commencement of Action is attached to this pleading as Exhibit "A."

10.     Petitioner will have caused a copy of this pleading to be served on the Attorney General not more than 10 days after the commencement of this lawsuit, as required by Public Resources Code Section 21167.7 and Code of Civil Procedure Section 388.

**Jurisdiction and Exhaustion of Administrative Remedies**

11.     Petitioner seeks review by and relief from this Court under Public Resources Code Sections 21168, 21168.5, and/or 30802, as applicable, and Code of Civil Procedure Sections 526a, 1060 *et seq.*, and 1084 *et seq.*, among other provisions of law.

12.     Petitioner was not required to exhaust administrative remedies because CITY failed to provide any public notice or hearing prior to approving the Project.

13.     Defendants/Respondents' conduct in approving the Project without complying with CEQA, the Coastal Act, and the San Diego Municipal Code ("SDMC") constitutes a prejudicial abuse of discretion because, as alleged in this pleading, they failed to proceed in a manner required by law.

14.     Petitioner has no plain, speedy, and adequate remedy in the ordinary course of law, since its members and other members of the public will suffer irreparable harm as a result of Defendants/Respondents' violations of CEQA, the Coastal Act, and other applicable laws. Defendants/Respondents' approval of the Project also rests on their failure to satisfy a clear, present, ministerial duty to act in accordance with the applicable laws. Even when Defendants/Respondents are permitted or required by law to exercise their discretion in approving projects under those laws, they

1     remain under a clear, present, ministerial duty to exercise their discretion within the limits of and in a

2     manner consistent with those laws. Defendants/Respondents have had and continue to have the capacity

3     and ability to approve the Project within the time limits of and in a manner consistent with those laws,

4     but Defendants/Respondents have failed and refused to do so and have exercised their discretion beyond

5     the limits of and in a manner that is not consistent with those laws.

6          15.     Petitioner has a beneficial right and interest in Defendants/Respondents' fulfillment of

7     all their legal duties, as alleged in this pleading.

8                                     **FIRST CAUSE OF ACTION:**
                                        **Illegal Approval of Project**

9                **(Against All Defendants/Respondents and Real Parties in Interest)**

10         16.     Paragraphs 1 through 15 are fully incorporated into this paragraph.

11         17.     The Project does not comply with all applicable laws. By way of example and not

12     limitation (including alternative theories of liability):

13              A.     The Project violates CEQA. In particular:

14                    i.     CEQA applies to every discretionary project proposed to be carried out

15     or approved by a public agency, unless the project is exempt from CEQA. Generally speaking, the

16     public agency must review the potentially significant environmental impacts of every discretionary

17     project subject to CEQA review that the agency proposes to carry out or approve. Such review involves

18     determining whether the proposal is exempt, should be the subject of a negative declaration, or should

19     be the subject of an environmental impact report.

20                    ii.     The use of a CEQA exemption is inappropriate when a project may have

21     significant environmental impacts or when there are potentially significant environmental impacts due

22     to unusual circumstances.

23                  iii.     The Project constitutes a "project" under CEQA because its approval

24     involved the exercise of discretion and has the potential to cause significant direct, indirect, or

25     cumulative adverse impacts (if not all such impacts) on the environment, including but not limited to

26     conflicts in Defendants/Respondents' land-use and zoning regulations.

27

28

1            iv.      These significant direct, indirect, or cumulative adverse impacts on the

2 environment give rise to Defendants/Respondents' legal obligation to subject the Project to CEQA

3 review.

4            v.      Defendants/Respondents' refusal to apply CEQA to the Project and

5 subject it to environmental review constitutes a violation of CEQA.

6            vi.      As a result of Defendants/Respondents' violation of CEQA, Petitioner

7 has been harmed insofar as Petitioner, its members, other members of the public, and the responsible

8 decision-makers were not fully informed about the potential adverse environmental impacts of the

9 Project, and insofar as Petitioner, its members, and other members of the public did not have an

10 opportunity to participate meaningfully in the analysis of such impacts prior to approval of the Project.

11        B.      The Project violates the Coastal Act. In particular:

12            i.      Public Resources Code Section 30512(a) provides in part as follows: "The

13 land use plan of a proposed local coastal program shall be submitted to the commission. The

14 commission shall, within 90 days after the submittal, after public hearing, either certify or refuse

15 certification, in whole or in part, the land use plan pursuant to the following procedure. . . ."

16            ii.      Public Resources Code Section 30514(a) provides as follows: "A certified

17 local coastal program and all local implementing ordinances, regulations, and other actions may be

18 amended by the appropriate local government, but no such amendment shall take effect until it has been

19 certified by the commission."

20            iii.      The Project has never been submitted to the California Coastal

21 Commission, has not been certified by the Commission, and thus has no legal force or effect even

22 though Defendants/Respondents insist that it does have legal force and effect.

23            iv.      As a result of Defendants/Respondents' violation of the Coastal Act,

24 Petitioner has been harmed insofar as Petitioner, its members, other members of the public have not

25 received the protection of California Coastal Commission oversight of the Project to ensure that it

26 complies with the public-access and other policies of the Coastal Act.

27

28

1         C.     The Project violates the SDMC. In particular:

2         i.     CITY was required by the SDMC to determine whether CEQA applies

3 to the Project. The determination entitles anyone who disagrees with it to appeal to CITY's city

4 council.

5         ii.     CEQA failed to make the requisite determination as to CEQA's

6 applicability to the Project.

7         iii.     As a result of Defendants/Respondents' violation of the SDMC, Petitioner

8 has been harmed insofar as Petitioner, its members, other members of the public have not received the

9 protection afforded through compliance with the SDMC.

10     18.     There is currently a dispute between Petitioner and Defendants/Respondents over the

11 Project's legal force and effect. Petitioner contends that the Project has no legal force or effect because

12 it violates CEQA, the Coastal Act, the SDMC, and/or one or more other applicable laws.

13 Defendants/Respondents dispute Petitioner's contention. The parties therefore require a judicial

14 determination of the Project's legal force and effect (if any).

15                                **Prayer**

16     FOR ALL THESE REASONS, Petitioner respectfully prays for the following relief against

17 Defendants/Respondents (and any and all other parties who may oppose Petitioner in this proceeding):

18         A.     A judgment or other appropriate order determining or declaring that

19 Defendants/Respondents failed to fully comply with CEQA, the Coastal Act, the SDMC, and/or one

20 or more other applicable laws as they relate to the Project and that there must be full compliance

21 therewith before final approval and implementation of the Project may occur;

22         B.     A judgment or other appropriate order determining or declaring that

23 Defendants/Respondents failed to comply with CEQA, the Coastal Act, the SDMC, and/or one or more

24 other applicable laws as they relate to the Project and that its approval and implementation was illegal

25 in at least some respect, rendering the approval and implementation null and void;

26         C.     Injunctive relief prohibiting Defendants/Respondents (and any and all persons acting at

27 the request of, in concert with, or for the benefit of one or more of them) from taking any action on any

28

aspect of, in furtherance of, or otherwise based on the Project unless and until Defendants/Respondents comply with CEQA, the Coastal Act, SDMC, and all other applicable laws, as determined by the Court;

D.      Any and all other relief that may be authorized by CEQA, the Coastal Act, the SDMC, or other applicable laws, or any combination of them, but is not explicitly or specifically requested elsewhere in this Prayer;

E.      Any and all legal fees and other expenses incurred by Petitioner in connection with this proceeding, including but not limited to reasonable attorney fees as authorized by the Code of Civil Procedure; and

F.      Any and all further relief that this Court may deem appropriate.

Date: November 1, 2018.              Respectfully submitted,

BRIGGS LAW CORPORATION

By:     _____
        Cory J. Briggs

Attorneys for Plaintiff and Petitioner San Diegans for
Open Government

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION
FOR WRIT OF MANDATE UNDER THE CALIFORNIA ENVIRONMENTAL
QUALITY ACT AND OTHER LAWS**

Exhibit "A"

# BRIGGS LAW CORPORATION

*San Diego Office:*
*4891 Pacific Highway, Suite 104*
*San Diego, CA 92110*

*Telephone: 619-497-0021*

*Please respond to: Inland Empire Office*

*Inland Empire Office:*
*99 East "C" Street, Suite 111*
*Upland, CA 91786*

*Telephone: 909-949-7115*
*Facsimile: 909-949-7121*

*BLC File(s): 1593.64*

1 November 2018

City Clerk Elizabeth Maland
City of San Diego
202 "C" Street, 2nd Floor
San Diego, CA 92101

**Via Fax Only to 619-533-4045**

Re:     Notice of Commencement of Action

Dear City Clerk:

I represent San Diegans for Open Government and am sending this Notice of Commencement of Action on my client's behalf.

Please be advised that an action is to be commenced by my client in San Diego County Superior Court against your agency. The action will challenge your agency's approval of an "administrative correction" to the Figure 12 in the Mission Bay Park Master Plan on or about October 3, 2018, on the grounds that the approval violated the California Environmental Quality Act (PUB. RES. CODE § 21000 *et seq.*). The action may also challenge your agency's approval of the project based on one or more violations of other laws.

If you have any questions, please feel free to contact me.

Sincerely,

BRIGGS LAW CORPORATION

Cory J. Briggs

*Be Good to the Earth: Reduce, Reuse, Recycle*

# BRIGGS LAW CORPORATION

*San Diego Office:*
*4891 Pacific Highway, Suite 104*
*San Diego, CA 92110*

*Telephone: 619-497-0021*
*Facsimile: 909-949-7121*

*Inland Empire Office:*
*99 East "C" Street, Suite 111*
*Upland, CA 91786*

*Telephone: 909-949-7115*
*Facsimile: 909-949-7121*

## FACSIMILE COVER SHEET

Recipient: City Clerk Elizabeth Maland

Recipient's fax number: 619-533-4045

Date: 1 November 2018     BLC File: 1593.64

Total Pages (including cover sheet): 2

Sender: Cory J. Briggs

Sender's fax number: ___ 619-515-6410  X  909-949-7121

Message: Please see the attached notice of commencement of action.  Thank you.

Original Document to Follow? ___ Yes   X  No

### CONFIDENTIALITY

The document accompanying this facsimile transmission contains information that may be either confidential, legally privileged, or both.  The information is intended only for the use of the recipient(s) named on this cover sheet.  If not done by or at the direction of the recipient(s), disclosure, copying, distribution, or reliance on any of the contents of this transmission is strictly prohibited.  If you have received this facsimile transmission in error, please notify us immediately by telephone so that we can arrange for its return at no cost to you.

*Be Good to the Earth*

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME : 11/01/2018 09:19
                                    NAME :
                                    FAX  :
                                    TEL  :
                                    SER.# : 000M3J198110
```

```
DATE,TIME              11/01   09:18
FAX NO./NAME           16195334045
DURATION               00:00:42
PAGE(S)                02
RESULT                 OK
MODE                   STANDARD
```

# BRIGGS LAW CORPORATION

*San Diego Office:*
*4891 Pacific Highway, Suite 104*
*San Diego, CA 92110*

*Inland Empire Office:*
*99 East "C" Street, Suite 111*
*Upland, CA 91786*

*Telephone: 619-497-0021*
*Facsimile: 909-949-7121*

*Telephone: 909-949-7115*
*Facsimile: 909-949-7121*

## FACSIMILE COVER SHEET

Recipient: City Clerk Elizabeth Maland

Recipient's fax number: 619-533-4045

Date: 1 November 2018     BLC File: 1593.64

Total Pages (including cover sheet): 2

Sender: Cory J. Briggs

Sender's fax number: ___ 619-515-6410  X  909-949-7121

Message: Please see the attached notice of commencement of action.  Thank you.

# VERIFICATION

STATE OF CALIFORNIA, COUNTY OF   San Diego

I have read the foregoing   Verified Complaint for Declaratory and Injunctive Relief etc.
_____ and know its contents.

☒ CHECK APPLICABLE PARAGRAPH

☐     I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒     I am ☒ an Officer ☐ a partner _____ ☐ a _____ of  San Diegans for Open Government _____ ,
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. ☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am one of the attorneys for _____
a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on   November 1 _____, 20 18 ____, at   San Diego _____ , California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Pedro Quiroz, Jr. _____

Type or Print Name

_____
Signature

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF _____

I am employed in the county of _____ , State of California.
I am over the age of 18 and not a party to the within action; my business address is, _____
_____

On _____, 20 ____, I served the foregoing document described as _____
_____
_____

_____ on _____ in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ BY MAIL
    ☐   * I deposited such envelope in the mail at _____ , California.
The envelope was mailed with postage thereon fully prepaid.
    ☐   As follows I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.
Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at
_____ California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.
Executed on _____, 20 ____, at _____ , California.
☐   **(BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.
Executed on _____, 20 ____, at _____ , California.
☐ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I
☐ (Federal)   declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Type or Print Name

_____
Signature

* (By MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX, OR BAG)
**(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

2001 © American LegalNet, Inc.

**EXHIBIT B**

F I L E D
Clerk of the Superior Court

FEB 0 7 2023

By: V. Secaur

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# COUNTY OF SAN DIEGO

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT,<br><br>        Plaintiff and Petitioner,<br><br>   v.<br><br>CITY OF SAN DIEGO and DOES 1 through 100,<br><br>        Defendants and Respondents. | Case No. 37-2018-00055910-CU-TT-CTL<br><br>**STATEMENT OF DECISION** |
| BH PARTNERSHIP, LP and DOES 101 through 1,000,<br><br>        Defendants and Real Parties in Interest. | |

1. **Overview and Procedural Posture.**

This is a CEQA case challenging changes made by the City of San Diego in October 2018 to the Mission Bay Park Master Plan by deleting the words "Retain Gleason Road" from Figure 12. Gleason Road runs northwesterly off West Mission Bay Drive, out towards the end of Bahia Point. It is situated near the Bahia Resort Hotel, which is owned by BH Partnership, and has for many years provided access to Mission Bay beaches and public parking. Petitioner alleges the deletion was done "unilaterally by City's director of the planning department (and not by the City Council) without any prior public notice, public input, or the posting of a Notice of Right to Appeal Environmental Determination ("NORA") as mandated by San Diego Municipal Code Section 112.0310(a)." Petitioner further alleges that as a result, "the Master Plan no longer requires City or any developer to maintain the public's access to Mission Bay via Gleason Road, *contrary to decisions made more than 20 years ago.*" ROA 1,16 (italics added).

Historically, most CEQA cases have come to the court as pure petitions for writs of mandate under CCP section 1094.5. For some reason, this seems to be changing in favor of hybrid actions, and so it is here. The operative charging pleading* was styled as a "Verified Complaint for Declaratory Relief and Petition for Writ of Mandate Under [CEQA] and Other Laws." It contains three counts: violation of CEQA; violation of the Coastal Act; and violation of the San Diego Municipal Code. It seeks a variety of declaratory and injunctive relief, as well as attorneys' fees.

The court incorporates the minutes for April 2, 2021 (ROA 91) for further background. On that day, the court granted BH Partnership's motion for summary judgment, finding that plaintiff had "failed to establish a triable issue of material fact that it was 'genuinely ignorant' of BH Partnership's identity at the time the complaint was filed[,]" and thus that the "relation back" doctrine did not save its claims against BH Partnership from being time-barred. The court, however, denied BH Partnership's additional request to dismiss the case altogether, holding that BH Partnership had failed to address the

1

STATEMENT OF DECISION

indispensable party issue in its moving papers, and thus had failed to establish that it is an indispensable party as matter of law.

Believing the court to have erred in not dismissing the case completely, BH Partnership unsuccessfully petitioned the Fourth District Court of Appeal, Div. 1, for extraordinary relief. ROA 110. BH Partnership also prevailed upon the City to seek leave to amend its answer to raise the affirmative defense that BH Partnership is an indispensable party, and filed a motion seeking reconsideration of the second part of the court's April 2, 2021 ruling. ROA 107-108. On June 25, 2021, following full briefing, the court granted both motions. ROA 124. The City's amended answer followed. ROA 126. The court also re-set the case for a hearing on the merits. ROA 123.

But more frustration and delay awaited. The City approached the court seeking a hearing on a motion for summary judgment (MSJ). ROA 128. The court acquiesced, set the motion for February 2022, and vacated the merits hearing. ROA 133, 135. The City's motion was thereafter filed, and joined by BH Partnership. ROA 136-145. However, just two weeks later, plaintiff/petitioner approached the court *ex parte* seeking to advance four discovery motions on the calendar. ROA 146-151. Over BH Partnership's objection, ROA 152-153, the court vacated the MSJ hearing date, and set the four motions to compel on calendar for that day instead. ROA 164. Ultimately, only two motions (not four) were filed. ROA 165-176. After full briefing and argument, the court denied the motions in a detailed ruling. ROA 190. The court also re-set the merits hearing for September of 2022, and continued the City's MSJ to July 1, 2022. ROA 188, 191.

Following full briefing and a hearing, the court denied the City's MSJ in a detailed ruling. ROA 216. The court held that the October 2018 memorandum was not sufficient to meet the City's initial burden of showing that BH Partnership was a necessary party, and thus an indispensable party, to this lawsuit; and that even assuming this initial burden had been carried, other evidence before the court raised a triable issue of material fact regarding whether the alleged "project" that is the subject of this

STATEMENT OF DECISION

action is an activity that involves the issuance to BH Partnership of a lease, permit, license, certificate, or other entitlement for use. *Ibid.*

The parties answered ready at the TRC (and even before the TRC). The court and the parties agreed on the following trial plan:

"Court will conduct a bench trial on ... 09/27/2022 and 09/28/2022. An opening brief on the CEQA issues and trial testimony will then be filed no later than 10/28/2022. Response brief will be due no later than 11/18/2022. Reply brief will be due no later than 12/09/2022. The matter will then be submitted for decision."***

ROA 224. The parties identified six potential witnesses for the testimonial portion of the trial. ROA 228, page 16. Petitioner filed two motions *in limine* (MIL). ROA 230-231. They were unopposed. The court reviewed the papers, and sent tentative rulings on the MIL to the parties on September 20, 2022. The parties answered ready at the trial call on September 22. ROA 239. All three parties filed pretrial briefs, which the court reviewed. ROA 232, 241-243.

The evidence portion of the case began on the morning of September 27, 2022, and concluded that same afternoon. Following opening statements which mirrored the pre-trial briefs, the court heard from four witnesses and received several exhibits into evidence. The evidentiary hearing was reported by a certified court reporter appointed *pro tempore*. ROA 256.

The court reviewed the administrative record (ROA 234-236, 248, 257) and the post-trial briefing. ROA 251-256, 261-262.

The court published its tentative decision (TD) on the principal controverted issues in accordance with CCP section 632 and CRC 3.1590 on December 20, 2022. ROA 263-264. The TD stated it would become the Statement of Decision (SOD) unless the steps required under CRC 3.1590(d) were taken by any party within the timeframe set forth therein. In this event, the court

designated Ms. Poyer to prepare the proposed SOD, and provided specific instructions. ROA 263 at page 3.

On December 30, 2022, plaintiff/petitioner filed its RFSOD. ROA 267. On January 9, 2023, the court reiterated its appointment of Ms. Poyer to prepare the PSOD. ROA 265-266. She later lodged and served the PSOD. ROA 269. Plaintiff/petitioner filed its objections to the PSOD on Feb. 7, 2023. ROA 268.

This is the Court's Statement of Decision. Unless specifically addressed below, plaintiff/petitioner's objections to the PSOD are overruled.

## 2. **Applicable Standards**.

**A.** Courts review an agency's action under CEQA for a prejudicial abuse of discretion. Pub. Res. Code § 21168.5. An agency may abuse its discretion under CEQA either by failing to proceed in the manner CEQA provides or by reaching factual conclusions unsupported by substantial evidence. *Id.* However, judicial review of these two types of error differs significantly. While the court determines de novo whether the agency has employed the correct procedures, scrupulously enforcing all legislatively mandated CEQA requirements, it accords greater deference to the agency's substantive factual conclusions. *Citizens for a Sustainable Treasure Island v. City and County of San Francisco* (2014) 227 Cal.App.4th 1036, 1045. In applying the latter substantial evidence standard, courts resolve all reasonable doubts in favor of the administrative finding and decision. *Mira Mar Mobile Community v. City of Oceanside* (2004) 119 Cal.App.4th 477, 486. Under CEQA, "substantial evidence" means "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached." CEQA Guidelines, § 15384(a). It includes "facts, reasonable assumptions predicated upon facts, and expert opinion supported by facts," but not speculation or unsubstantiated opinion. CEQA Guidelines, § 15384(a), (b).

**B.** CEQA establishes "a three-tiered process to ensure that public agencies inform their decisions with environmental considerations." *Banker's Hill, et al v. City of San Diego* (2006) 139 Cal.App.4th 249, 257; see also CEQA Guidelines, § 15002(k) (describing three-step process). "First, the agency must determine whether the proposed activity is subject to CEQA at all." *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1185. "Second, assuming CEQA is found to apply, the agency must decide whether the activity qualifies for one of the many exemptions that excuse otherwise covered activities from CEQA's environmental review." *Id.* "Finally, assuming no applicable exemption, the agency must undertake environmental review of the activity, the third tier." *Id.* at 1185. The agency must undertake an initial study to determine whether the project "may have a significant effect on the environment." CEQA Guidelines, § 15063(a). If the initial study finds no substantial evidence that the project may have a significant environmental effect, the lead agency must prepare a negative declaration, and environmental review ends. Pub. Res. Code § 21080(c)(1). If the initial study identifies potentially significant environmental effects but (1) those effects can be fully mitigated by changes in the project and (2) the project applicant agrees to incorporate those changes, the agency must prepare a mitigated negative declaration. This too ends CEQA review. Pub. Res. Code § 21080(c)(2). If the initial study finds substantial evidence that the project may have a significant environmental impact and a mitigated negative declaration is inappropriate, the lead agency must prepare and certify an EIR before approving or proceeding with the project. Pub. Res. Code § 21080(d).

**C.** The Coastal Act, which created the Coastal Commission, is codified in Public Resources Code section 30000 *et seq.* Under the Coastal Act, each local government lying, in whole or in part, within the coastal zone (as San Diego clearly does) is required to prepare a local coastal program [LCP] for that portion of the coastal zone within its jurisdiction. Pub. Res. Code § 30500(a). While the precise content of each LCP is determined by the local government, it must be done "in full

consultation with the commission and with full public participation." *Id.*, § 30500(c); *see also id.*, §

30006 ("the public has the right to fully participate in decisions affecting coastal planning,

conservation, and development"). By law, the LCP must include "(a) land use plans, (b) zoning

ordinances, (c) zoning district maps, and (d) within sensitive coastal resources areas, other

implementing actions, which, when taken together, meet the requirements of, and implement the

provisions and policies of, [the Coastal Act] at the local level." *Id.*, § 30108.6. An LCP "may be

amended by the appropriate local government, but no such amendment shall take effect until it has

been certified by the commission." *Id.*, § 30514(a) (emphasis added); SDMC, § 122.0106(c).

    **D.** Section 112.0301(d) of the San Diego Municipal Code requires the City to provide written

notice of any amendment to its LCP. SDMC, §§ 112.0301(d) (Notice of Availability of Local Coastal

Program Amendment), 112.0302(b) (Persons Entitled to Notice), 113.0103 (defining Local Coastal

Program), 122.0106 (Certification Requirements for Local Coastal Program Amendments). Section

112.0310 of the SDMC requires the City to provide a Notice of Right to Appeal Environmental

Determination. SDMC, §§ 112.0310, 113.0103 (defining environmental determination). The

interpretation of the Municipal Code involves pure questions of law and are therefore subject to *de*

*novo* review. *Save Our Heritage Organization v. City of San Diego*, 237 Cal. App. 4th 163, 174 (2015).

    **E.** The court incorporates part 2C of the minutes from July 1, 2022 (ROA 216). In a CEQA

action, Public Resources Code section 21167.6.5(a) supplants Code of Civil Procedure section 389 for

the "necessary" factor. *In re Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758,

855. The statute requires a petitioner/plaintiff to "name, as a real party in interest, the person or persons

identified by the public agency in its notice filed pursuant to subdivision (a) or (b) of Section 21108 or

Section 21152 or, if no notice is filed, the person or persons identified in subdivision (b) or (c) of

Section 21065, as reflected in the agency's record of proceedings for the project that is the subject of

an action or proceeding[.]"

STATEMENT OF DECISION

**F.** The court incorporates parts 2B and 2C of the minutes from April 2, 2021 (ROA 91).

**G.** CCP section 632 provides:

"In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . ."

**H.** "[I]t is settled that the trial court need not, in a statement [of] decision, 'address all the legal and factual issues raised by the parties.' [Citation.] It 'is required only to set out ultimate findings rather than evidentiary ones.' [Citation.] '"[U]ltimate fact[]"' is a slippery term, but in general it refers to a core fact, such as an element of a claim or defense, without which the claim or defense must fail. [Citation.] It is distinguished conceptually from 'evidentiary facts' and 'conclusions of law.' [Citation.]" (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559.) "The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case." (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118.) A specific finding on a disputed factual issue is not required when that finding may necessarily be implied from a general finding. (*St. Julian v. Financial Indemnity Co.* (1969) 273 Cal.App.2d 185, 194.)

**I.** The court is not required to respond to interrogatories posed by parties under the guise of identifying principal controverted issues. As the court held in *Pannu v. Land Rover N. Am., Inc.*, 191 Cal. App. 4th 1298, 1314 n. 12 (2011), "the trial court is not required to respond point by point to issues posed in a request for a statement of decision." The law is well settled that a court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case. *Ermoian v. Desert Hospital*, 152 Cal. App. 4th 475, 500 (2007); *Hirshfield v. Schwartz*, 91 Cal. App. 4th 749, 763 (2001); *Marriage of Burkle*, 139 Cal. App. 4th 712 at footnote 15 (2006).

### 3. The Evidence.

The court's credibility determinations below are guided by the factors of CACI 107, among others.

The first witness, called by petitioner, was Mike Hansen. Prior to 2014, worked at Sheppard Mullin.**** Then went to City of San Diego. Became planning director in 2018. Familiar with AR 668, Mission Bay Park Master Plan. Fall of 2018, administrative correction, not a legislative amendment. Attempted impeachment with depo was not impeaching. AR 528. Initials of his subordinate Alyssa Muto. This is the administrative correction in question. Ex. 56— does not recognize. LCP is local implementation of Coastal Act. Legislative amendment requires Commission approval. Does not recall speaking to Evans or Gleason. Possibly spoke to Saatof. Relied on staff. Digital copy had "Retain Gleason Road." Not aware of hard copy. Only investigation was Muto's. Consulted with City Attorney's office. Someone in his staff made a mistake. Mildly impeached with depo on whether he was "required" to approve the admin. correction.

Friendly cross by Mr. Syz at 11:10. Described Muto's work, recommendation, memo. Normal delegation. Described Muto's background/experience. She reviewed the 1990's documents. Must have been a mistake because not legislatively approved. Staff fixing a staff error to bring it into conformance with decisions made by legislative bodies.

Examination by Llewellyn at 11:19.

Redirect: 11:20. Did not investigate who added the words. Does know it was a mistake. Left City in January 2022. Opened a land use consulting practice.

The court found Mr. Hansen credible.

Second witness, called by petitioner: Robert Gleason. CEO of Evans Hotels LLC. Lawyer. BH Partnership owns the Bahia Hotel. Common ownership. Personally oversees Bahia Hotel. Leases land from City; current lease adopted in May of 2013. Ex. 56 is a rescinded lease. Not current lease. Not

substantively different from current lease. Not received. AR 528 — he saw it before. No land use amendments pending in 2018, but did have a lease amendment application pending since 2016. Evans signed that request. The application is AR 476. He has a map without "Retain Gleason Road" from the hearings in the late 1990s. He attended all the public hearings in the 1990s. Does not have one with a "received" stamp. Does not know who added the words.

Wrote a letter to City Attorney, Ex. 20.52, 20.51. 1/8/19. Did not copy Briggs. Didn't think he needed to. Joint defense agreement. Ex. 22.01.

Petitioner/plaintiff rested just before noon.

1:30 p.m. — afternoon session.

The City rested without calling any witnesses.

RPI called, at 1:34 p.m., the third witness, Alyssa Muto. She described her education and background. Hired by City in 2016 as deputy director in Planning Dept. Still works at City, but in a different role. Amendment to master plan requires environmental review, and if in Coastal Zone, Commission review. AR 528 was her work but she denies initialing it. Described her "forensic review." "Retain Gleason Road" was not there. She concluded it was an error. AR 10 was one of the documents she reviewed, and it factored into her recommendation to make the administrative correction. AR. 241 — Byron Wear. AR 674 — email from Watson. She reviewed transcript he forwarded. Came to light in connection with lease amendment request. AR 513 — another Watson email. Asked for prompt correction of on-line version of figure 12. No legislative document says "retain Gleason Road." Not a "project" under CEQA.

Cross at 1:57 by petitioner. Looked at paper and digital copies of figure 12. No figures were included in what she found at the City Clerk's office. Does not know how "Retain Gleason Road" came to be there. She was not there and did not investigate a potential "rogue employee."

Does not know who prepared attachment A to AR 10. Commission deferred decision on Gleason Road to later actions. Gleason Road is a "park road."

Redirect at 2:10.

The court found Ms. Muto credible.

2:12 p.m. Robert Gleason recalled by RPI. 35 years with Bahia Hotel. CFO in 1993; GC in 1998. CEO in 2014. 1988 was first redevelopment proposal. Mission Bay Master Plan took 7 years. Attended all of the meetings. Redevelopment of Bahia Point was a contentious issue. 1995 lawsuit. Back to Commission. Attended Nov. 15, 1996 Commission hearing. AR 223. BH opposed Wear proposal. Commission adopted Wear's proposal over BH objection, with some changes on the dais. But none of these said "retain Gleason Road." It was a "master plan," not a specific development proposal. Questions from court regarding access and figure 12. Never saw map with "Retain Gleason Road" until 2014. Described how he learned. His versions from the hearing did not have that. He attended 2/6/97 hearing. Kirshner***** was both a City Staff member and a leader of the group that had filed the 1995 lawsuit. She insisted the Commission should retain Gleason Road in its present configuration. There was not a requirement to retain Gleason Road. AR 261: he drafted for Bill Evans.

AR 474. Current redevelopment process began in 2014. He and Watson drafted the November 5, 2015 letter. AR 664. Lease amendment was pulled off docket due to opposition from hotel workers union.

Cross at 3:15. AR 10: does not know how attachment A was prepared or by whom.

The court found Mr. Gleason's testimony very credible, candid, and solid. Critically, he was the only witness who testified who had the complete history of the dispute, going all the way back to 1996, in his/her grasp. In other words, he was the only one with first hand personal knowledge of all the events surrounding this case. The court gave additional weight to his testimony accordingly, and disagrees with the reply briefs dismissal of it as "self serving." It is noteworthy that SDOG did not call

10

Ms. Kirshner or Ms. Sharpe (or anyone else) on the "line and arrow" contention (or anything else), or explain its failure to do so. See CACI 203, 205.

Fourth witness: Theresa Quiroz. Secretary of SDOG. Filing date of complaint. Did not name BH at that time. Added BH in February Of 2020. "Right before we added BH as a party we got an email from the City." Witness added little.

RPI rested. There was no rebuttal case. The live evidence portion of the trial concluded. The court then waited for the post-trial briefing.

## 4. Augmentation Motion.

SDOG filed, with its post-trial brief, a motion to augment the administrative record with a 2013 lease. ROA 251. BH filed opposition. ROA 254. SDOG replied. ROA 261.

The administrative record may only be augmented where the proponent makes the showing under CCP section 1094.5(e): 1) that the imposed evidence could not have been produced at the administrative hearing through the exercise of reasonable diligence; or 2) that the proposed evidence was improperly excluded at the administrative hearing. Situations in which such "extra-record" evidence should be admitted by a court are relatively rare. *Western States Petroleum Assn. v. Superior Court*, 9 Cal 4th 559, 578 (1995); *City of Fairfield V. Superior Court*, 14 Cal.3d 768, 776 (1976); *Toyota of Visalia v. New Motor Vehicle Bd.*, 188 Cal.App.3d 872, 881 (1987). Determination of the question of whether one of the exceptions (to the general rule of non-admissibility) applies is within the discretion of the trial court, and "will not be disturbed unless it is manifestly abused." *Pomona Valley Med Or. v. Superior Court*, 55 Cal.App.4th 93, 102 (1997).

The motion is denied. Not only did petitioner fail to make the diligence showing required under the case law summarized immediately above, but an earlier version of the same lease was properly ruled inadmissible during the bench trial as it was not authenticated. The parties' quibbling (e.g. ROA 261, text accompanying footnote 3) over whether the lease had been "produced" is really beside the

point. The real question is this: Did SDOG, in a case filed in 2018, have plenty of opportunity to include a 2013 lease in a lengthy administrative record that was not submitted to the court until late 2022? Yes.

Generally speaking, the rule in mandamus cases is "take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two." *Protect Our Water v. Cty. Of Merced*, 110 Cal. App. 4th 362, 364 (2003). The court applies this rule here.

### 5. Discussion and Rulings on Merits.

A.    Count 1 Under CEQA: Was the deletion of "**Retain Gleason Road**" a "project"? No.

CEQA defines "project" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment[.]" Pub. Res. Code § 21065. "In dealing with an agency's conclusion that the action in question was not a project within the meaning of CEQA...the trial court can employ its own analysis of undisputed facts in the record and decide the question as a matter of law without deference to the agency's decision." *Friends of the Sierra Railroad v. Tuolumne Park & Recreation Dist.* (2007) 147 Cal.App.4th 643, 651.

In this case, the evidence is quite strong that the words "**Retain Gleason Road**" on former Figure 12 were added without approval or direction by the City Council or the Coastal Commission, after the legislative approvals that occurred in late 1996 and early 1997. The circumstantial evidence easily preponderates in favor of a finding that a former City planning staff member who opposed any effort to change Gleason Road from its then current configuration is the one responsible for surreptitiously adding "**Retain Gleason Road**" -- in a strikingly different typeface from the rest of the document — after the Coastal Commission and the City Council refused her request in 1997 to make this clear in the Mission Bay Master Plan. AR 4139-4140, 4145.

Contrary to plaintiff/petitioner's theory of the case (the administrative correction was "contrary to decisions made more than 20 years ago"), the evidence is overwhelming that the City Council and the Commission both intentionally deferred the question of retaining, deleting or modifying Gleason Road when the Master Plan was approved. In other words, granting the relief sought in this complaint/petition would be "contrary to decisions made more than 20 years ago." Said yet another way: The City and the Commission did NOT decide to retain Gleason Road in 1996-97; they decided, as political actors often do, to delay a decision about Gleason Road until some later time. AR 446:7117, AR 669:9162. And this makes complete sense, as no specific redevelopment plan was then before either body.

During the September 27, 2022 evidentiary hearing, the court kept waiting for direct evidence from SDOG that the City Council and the Commission both decided to retain Gleason Road when the Master Plan was approved. This, the court assumed, was the reason for adding a declaratory relief count, insisting on an evidentiary hearing, and departing from the pure writ approach. There was no such evidence. The only direct evidence was to the contrary. And the indirect evidence offered by SDOG was quite weak.

The same observations are apt when it comes to the administrative record. AR 29:359-360; AR 239:4173-4186; AR 245:4202-4203; AR 10:79-80; compare AR 668:8854; AR 665:8436. AR 2018 reflects Commissioner Wear's proposal, at a public hearing of the Commission, to defer specific decisions about redevelopment of Bahia Point until after development of a "more precise plan which I am sure will get a full debate at the local level." He went on to develop his motion in more detail at AR 2019-2022; "**Retain Gleason Road**" is conspicuously absent from that motion. His motion, as amended (AR 2051), passed. AR 2054. This action by the Commission was later approved by the City despite Ms. Kirshner's opposition. AR 2106-2108. None of the figures reflecting the "suggestions of Commissioner Byron Wear" say "**Retain Gleason Road**." AR 4113, 4116, 4137 4176, 4184. Nor do

13

the variations of this figure. AR 4138. One variation — *i.e.,* the one attached to Ms. Kirshner's letter of opposition — says (in different handwriting from the emendations on other versions) "RETAIN ROAD." AR 4139-4147 (specifically 4145). But nothing in the record supports the implicit contention of SDOG: that the Commission agreed with Ms. Kirshner.

If anything, Commissioner Wear's specific desire to retain a 2 foot lawn area and add a 10 foot pedestrian/bikeway, while also allowing expansion and footprint-shifting of the Bahia Hotel, is inconsistent with a decision to retain Gleason Road. It does not appear to the court there is room for all four. But Mr. Wear was quick to reiterate his intention to "retain a broad, non-specific meaning for future interpretation." AR 4185-86. The assistant director of the Commission was very clear that the retention of Gleason Road was "open to further review." AR 4188-89, 6755. This is the exact *opposite* of a decision to retain the roadway; it is fatal to plaintiff/petitioner's theory of the case. Contrary to SDOG's reply brief at pp. 2-3, a decision today finding that the Commission and the City decided in 1997 to **"Retain Gleason Road"** would be an entirely unreasonable "reduction of the criteria and guidelines to visual text and figures."

In short, there is nothing in the administrative record materials from 1996-1997 to support the conclusion that **"Retain Gleason Road"** was the all-or-nothing talisman petitioner now contends it was. Subsequent review by the Commission confirms this view. The Commission's District Manager said so in 2014: "the Commission's 1997 action did not require the retention of Gleason Road." An agency's interpretation of its own decision is entitled to significant deference, particularly if it was (as here) "the result of high-level, formal agency decisionmaking." *Cleveland Nat'l Forest Found. v. County of San Diego*, 37 Cal. App. 5th 1021, 1053, fn. 15 (2019) (O'Rourke, J.).

SDOG's reply argues no deference is warranted because of the City's "recent about-face." This is not supported by the evidence. RPI's 2015 submission (AR 7180-7185) does not contemplate the complete closure of Gleason Road. And SDOG's reliance on the *Orange Citizens* case (ROA 262 at

14

page 5) is misplaced. There, the administrative correction "would pave the way for approval of applicant's project." *Ibid.* at lines 18-19, citing 2 Cal. 5th at 147-151. Here, as discussed in more detail *infra*, BH Partnership acknowledges the notional redevelopment plan suggested by AR 7185 would have to be the subject of a further approval process.

Plaintiff/petitioner goes to great lengths in the post-hearing briefing to point out that Figure 12 was in the administrative record. ROA 252, page 13*ff.* This is true, but begs the question: in what manner did it get there? The evidence is overwhelming that it got there by the machinations of a devious and disappointed former City staffer with an axe to grind. AR 230:4139-4147. The inference is strong that (as the former City staffer hoped) others within the City failed to notice it for years because they had moved on to other matters. This negates the argument presented in the reply at 6:12-23, and squarely addresses plaintiff/petitioner's objections 2, 3 and 6. Contrary to the post trial briefing (ROA 252 at 14) (and further distinguishing this case from *Orange Citizens*), here there is evidence of an unauthorized alteration: the typeface of **"Retain Gleason Road"** is different from the rest of Figure 12; there is nothing in the AR suggesting this was the decision of the decision-makers; and the only explanation of this that hangs together is the record sabotage posited by the City and RPI. Plaintiff/petitioner's suggestion (ROA 252 at 21) that a decision to Retain Gleason Road was "always contemplated" is speculative at best. Indeed, it strains credulity to argue that the City Council and the Commission would put such an important set of handcuffs on BH Partnership in such an obscure and indirect manner. It makes no sense, in a lengthy and detailed Master Plan filled with narrative and detail, to consign a decision such as this to an opaque three word legend on an exhibit. If petitioner's contention had been the result intended, one would have expected it to have been done in a direct manner, explaining the rationale behind the decision and leaving no one's intention open to question. This kind of explanation is missing precisely because **"Retain Gleason Road"** was <u>not</u> the decision.

Petitioner contends that the words **"Retain Gleason Road"** must be presumed to have appeared in the Master Plan since at least 1997 because the City certified the administrative record in this action, which contained copies of the Master Plan with the errant notation, and because a 2002 amendment to the Master Plan did not correct the error. Evidence Code sections 1530 and 1532, cited by Petitioner in support of this argument, relate to the validity of official public documents and certified documents. They do not create a presumption that a public document contains no errors; at best, they create a rebuttable presumption of such documents' validity. Certification of the administrative record here did not result in an admission or concession that **"Retain Gleason Road"** was properly included in the Master Plan. Indeed, the administrative correction of that error is the primary issue in this lawsuit. That the City failed to notice the error in the 2002 Amendments to the Master Plan also does not support the conclusion suggested by Petitioner. The update did not involve Bahia Point, but instead was related to Sea World. AR 5209 (Cover page of 2002 Master Plan update contains handwritten comment next to "July 9, 2002 Resolution" that says "Sea World"); AR 7014 ("[T]he Coastal Commission made several revisions to the Mission Bay Master Plan during the Local Coastal Program Amendment approval process for the Sea World Master Plan Update, adopted by the City Council in July 2002.") Any presumption that "Retain Gleason Road" was on the Master Plan has been rebutted by the evidence presented and cited above.

In sum, there was no CEQA violation because there was no "project." The administrative correction undertaken by the City served to return the City's records to the state they should have been in after the 1996-97 approvals. In the unlikely event another tribunal concludes there was a "project," the court finds that petitioner/plaintiff has failed to demonstrate that the City failed to proceed in a manner required by law. Further, the actions of Mr. Hansen and Ms. Thompson in undertaking the administrative correction were based on substantial evidence. In generating and approving AR 528:7426-7428, they received enough relevant information and made reasonable inferences from this

16

information supporting the decision to make the administrative correction. The evidence before the court easily confirms that a fair argument can be made to support their conclusion: **"Retain Gleason Road"** was not approved by the Commission or the City Council.

Plaintiff/petitioner is entitled to no relief on count 1.

**B.** Count 2 Under the Coastal Act. This claim fails because the administrative correction did not effect a change to the LCP. Rather, it corrected an error in Figure 12. [More accurately, it likely corrected a cowardly act of record sabotage by a disgruntled former City staffer; but it is enough to say that an error was corrected.]

What Mr. Hansen did at BH Partnership's request and Ms. Muto's recommendation was akin to what is allowed under CCP section 473(d). Under this statute, clerical errors may be corrected at any time to conform judgments to the results actually reached. *See Machado v. Myers*, 39 Cal. App. 5th 779, 797 (2019)(Guerrero, J.), citing *Ames v. Paley*, 89 Cal. App. 4th 668, 672-674 (2001); *see also Lint v. Chisholm*, 121 Cal. App. 3d 615, 623 (1981)(Work, J.); *People v. Humphrey*, 44 Cal. App. 5th 371, 379 (2020) (Huffman, J.); *compare Felczer v. Apple Inc.*, 63 Cal. App. 5th 406, 414 (2021) (Dato, J.).

Here, the glaring error in Figure 12 was deleted, consistent with the decisions of the Commission not to decide about Gleason Road until a specific plan was put forward. No one's substantive rights were interfered with. This is so because BH Partnership concedes that any future plan to eliminate, shorten, re-align, truncate or materially change Gleason Road would have to be approved by the City Council. RT 110:12-27; AR 7180-7185. All that has happened is that an unhappy former City staffer has cost all parties and the Court a great deal of time and effort and money, for no good reason.

The court perceives wisdom in the 1996-97 decision to defer a decision on what to do about Gleason Road. As has already been noted, no specific redevelopment plan was then before the City or

the Commission. 27 years later, there is only the roughest outline of such a proposal (AR 7185).

Experience gained by the passage of nearly three decades — during which there have been, from all that appears, no changes whatsoever to Gleason Road — have taught us that rising sea levels from global warming could very well make the permanent retention of Gleason Road a pipe dream at worst and problematic at best (as the roadway is mere footsteps away from the waters of Mission Bay). At the same time, access to a public resource via emissions-producing automobiles and paved parking lots is not, in the view of at least some, the best way to insure the widest and most environmentally conscious access to that resource. A bikeway/walkway all the way around Bahia Point might well be better, but unobtainable if current planning is shackled by SDOG's incantation **"Retain Gleason Road."** Yet SDOG would forever constrain redevelopment plans not yet submitted with three words snuck onto an exhibit to a 27 year old Master Plan. Viewed in this light, SDOG's position in a very real sense is the antithesis of "open government:" SDOG would have the court endorse the secret actions of an unhappy former City staffer rather than follow the evidence of what the elected and duly appointed decision makers actually decided, and then permit current office-holders to pass on the propriety of whatever redevelopment plan ultimately is presented (as their 1997 predecessors intended).

What would explain petitioner's insistence on seeking to take unfair advantage of the egocentric and unauthorized alteration of the records disclosed by the evidence in this case? Obviously, SDOG would hope it or others could use **"Retain Gleason Road"** to combat any future redevelopment plan submitted by BH Partnership proposing to change Gleason Road as being inconsistent with the Master Plan. This would then entail BH Partnership or its successor seeking to amend the Master Plan, with all the added expense and further delay associated with that. Economic blackmail, in other words. There is just no justification for it, when BH Partnership acknowledges it would be required to gain approval of a future site-specific redevelopment plan in any event.

Plaintiff/petitioner is entitled to no relief on count 2.

C. Count 3 Under the Municipal Code. This claim fails because it is dependent on there having been an amendment to the LCP. ROA 252 at 33. As the court has already determined, there was no amendment to the LCP, and thus no requirement that the City make an environmental determination or publish any notice of right to appeal environmental determination. Plaintiff/petitioner is entitled to no relief on count 3.

D. Affirmative Defense: Failure to Join Indispensable Party (BH Partnership). In light of the court's disposition of the case as aforesaid, and in light of the extensive prior rulings by this court and the Court of Appeal on this subject (ROA 91, 110, 124, 216), the court finds it need not address this defense any further. *See PDK Labs. Inc. v. DEA*, 362 F.3d 786,799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (noting "the cardinal principle of judicial restraint" that "if it is not necessary to decide more, it is necessary not to decide more"); *Compare Natter v. Palm Desert Rent Review Comm'n.*, 190 Cal. App. 3d 994, 1001 (1987) (reversal on stated grounds made it unnecessary to resolve other contentions challenging constitutionality); *Young v. Three for One Oil Royalties*, 1 Cal. 2d 639, 647-648 (1934) (court declined to rule on matters unnecessary to resolving the case before the court, as to do so would be to provide "dictum pure and simple"). Perhaps more importantly (from a practical standpoint), nothing would gained from a theoretical further resolution of this issue, as BH Partnership participated through the entire trial. In other words, the allegedly indispensable party was joined.

E. Affirmative Defense: Statute of Limitations. In light of the court's disposition of the case as aforesaid, and in light of the extensive prior rulings by this court and the Court of Appeal on this subject (ROA 91, 110, 124, 216), the court finds it need not address this defense any further. See *PDK Labs. Inc. v. DEA*, 362 F.3d 786,799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (noting "the cardinal principle of judicial restraint" that "if it is not necessary to decide more, it is necessary not to decide more"); *Compare Natter v. Palm Desert Rent Review Comm'n.*, 190

1  Cal. App. 3d 994, 1001 (1987) (reversal on stated grounds made it unnecessary to resolve other

2  contentions challenging constitutionality); *Young v. Three for One Oil Royalties*, 1 Cal. 2d 639, 647-

3  648 (1934) (court declined to rule on matters unnecessary to resolving the case before the court, as to

4  do so would be to provide "dictum pure and simple"). Perhaps more importantly (from a practical

5  standpoint), nothing would gained from a theoretical further resolution of this issue, as BH Partnership

6  participated through the entire trial. In other words, the allegedly indispensable party was joined.

7

8                                                ###

9        Based on all the foregoing, the court determines that plaintiff/petitioner is entitled to no relief,

10  and that the City and BH Partnership are the prevailing parties and are each entitled to file a

11  memorandum of costs. Ms. Poyer must prepare and submit forthwith for the court's signature a form of

12  judgment consistent with the foregoing.

13        The clerk must forthwith provide copies of this decision to counsel for all parties.

14

15

16

17  **IT IS SO ORDERED.**

18

19

20  Dated: February 7, 2023

21                                          Timothy B. Taylor
                                            Judge of the Superior Court
22

23

24

25

26  *ROA 1, as amended by ROA 31.

27  **The end result being that BH Partnership was no longer the recipient of a favorable summary judgment ruling.

28

***The court now regrets endorsing this agreement of the parties. The period between the evidentiary hearing and the filing of closing briefing was too long. The ensuing briefing was as well. Plaintiff/petitioner used 42 pages; much of it plowed old ground. The City and BH Partnership collectively used 66 pages, when joint briefing was clearly indicated on at least some issues. The submission date was delayed by a week via *ex parte* application. ROA 259-260.

****The court also worked there, from 1983 to 2005. The court recollects no dealings with Mr. Hansen, who worked in a completely separate practice group.

*****The reporter's transcript spells Ms. Kirshner's name with a "c." This decision uses the spelling used in AR 2106, AR 4140 and AR 4188, but hastens to make clear that it is the same person.